Roosevelt CARTER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–81–00568–CR.

Court of Appeals of Texas,
Dallas.

Jan. 5, 1983.

Charles H. Erwin, Dallas, for appellant.

Henry Wade, Dist. Atty., Kathi Alyce Drew, Asst. Dist. Atty., Dallas, for appellee.

Before GUITTARD, C.J., and SPARLING and VANCE, JJ.

GUITTARD, Chief Justice.

Appellant was convicted of possession of a controlled substance. He contends that the trial court erred in denying his motion to suppress the drugs as fruits of an illegal arrest and an illegal search. We hold that his arrest without a warrant was permitted by article 14.04 of the Code of Criminal Procedure because of information available to the officers that a felony had been committed and that the offender was about to escape, and we hold that the search was proper because of appellant's voluntary, written consent. Accordingly, we affirm.

### 1. The Arrest

We recognize the general rule that an officer should obtain an arrest warrant when possible. *Hardison v. State,* 597 S.W.2d 355, 357 (Tex.Cr.App.1980); *Honeycutt v. State,* 499 S.W.2d 662, 664 (Tex.Cr.App.1973). However, an exception to the warrant requirement is stated in article 14.-04 of the Texas Code of Criminal Procedure, which permits a peace officer to make a warrantless arrest when he has reasonably trustworthy information that a felony has been committed and that the offender is about to escape. We conclude that the arrest in this case was within the exception provided by article 14.04.

Officer Foster testified that about 7:30 in the evening before the arrest he had received information from a confidential

source that appellant, accompanied by a man named Johnson, was picking up a shipment of illegal drugs in Los Angeles and would be arriving at the Dallas-Fort Worth airport between nine o'clock that evening and six o'clock the following morning. The informant described the suitcase containing the drugs and the automobile appellant had driven to the Dallas-Fort Worth airport before leaving for Los Angeles. Foster testified that on many previous occasions the informant had given him information that had proved to be reliable. After receiving this information, Foster and several other officers went to the airport and set up surveillance at about 8:30 p.m. Foster checked the passengers listed for the incoming flights from Los Angeles and discovered that one ticket had been purchased in the name of R.C. Carter and one in the name of Johnson. When appellant and his companion did not arrive on the flight indicated by the reservation, the surveillance continued. Appellant and Johnson finally arrived at 6:30 the following morning. In the baggage-claim area the officers observed that Johnson picked up a suitcase matching the one described by the informant. Johnson and appellant then placed the suitcase in the trunk of a car matching the vehicle described. The officers followed the car until it was inside the Dallas city limits. Then they stopped the car, arrested the occupants and seized the suitcase.

■ Appellant contends that the officers had no probable cause to arrest him without a warrant. We disagree. After appellant arrived at the airport and the officers had verified the information available to them, the officers had probable cause to believe that appellant had committed a felony, that he was about to escape, and that there was no time to procure a warrant. Consequently, they were authorized by article 14.04 to arrest appellant without a warrant. *Jones v. State,* 640 S.W.2d 918, 921 (Tex.Cr.App. 1982). Under the circumstances shown the arrest was not an unreasonable seizure in violation of the Fourteenth Amendment. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Appellant emphasizes Officer Foster's testimony that he probably had time to obtain a warrant of arrest after he reached the airport and set up surveillance. However, Foster also testified that he was not sure that the facts then available to him would have supported the issuance of a warrant. Appellant does not dispute this conclusion. He argues that if the officers had no probable cause to get a warrant when they began the surveillance, they had no probable cause for arrest later because what the officers observed after appellant's arrival was nothing more than innocent behavior and, therefore, could not supply the missing probable cause.

We do not agree. In *Draper,* similar verification of information previously received was held sufficient to establish probable cause for arresting a suspect who might otherwise escape, even though the details verified did not provide direct evidence of crime. 358 U.S. at 313, 79 S.Ct. at 333. A similar holding was made recently by the Court of Criminal Appeals in *Jones,* 640 S.W.2d 918. Consequently, the trial court was justified in holding that the circumstances observed by the officers at the airport, together with the information supplied by the informant, provided probable cause for the arrest without a warrant.

We need not decide whether the officer could have obtained a warrant on the information available to him before appellant arrived at the airport. That question has not been raised in the trial court or on this appeal. We hold only that at the time of this arrest, the statutory and constitutional requirements for a warrantless arrest had been met.

### 2. The Search

Appellant's attack on the validity of his written consent to the search of the suitcase is based primarily on his claim of the illegality of the arrest, which we reject for the reasons stated. However, since appellant argues that the "totality of the circumstances" compel the conclusion that the consent was not voluntarily given and also challenges the legality of the seizure of the

suitcase at the time of the arrest, we have reviewed the record on voluntariness of the consent.

The record shows that approximately ten officers were present when appellant's vehicle was stopped. Officer Foster testified that after appellant was taken out of his vehicle, a uniformed officer took the car keys from the ignition and handed them to Officer Foster. Officer Foster further testified that he then told appellant that the police were going to get what was in the suitcase and that appellant responded, "Well, it sounds like you already know what's in there, so go ahead." On cross-examination Foster admitted that appellant was simply acquiescing in the officer's claim of lawful authority to search his trunk.

■ We hold that this seizure was not illegal. The same information that justified the arrest identified the suitcase as the probable container of the contraband, and the officers had seen appellant and his companion place it in the trunk. Since the officers had probable cause for the arrest, as we have held, they also had probable cause to seize the suitcase, if not to search it without appellant's consent. *Gonzales v. State,* 467 S.W.2d 454, 456 (Tex.Cr.App. 1971). They refrained from searching it without consent, thus complying with the constitutional requirement of a search warrant recognized in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Consequently, the seizure of the suitcase cast no taint of illegality on appellant's later written consent.

The officers did not attempt to search the suitcase when they removed it from the automobile. They took both the suitcase and appellant to the police station in downtown Dallas. According to Officer Foster, when they got downtown he asked appellant whether he would give his consent to search the luggage or did they need to get a search warrant. Appellant replied, "I'll sign the search. You know what's in there anyway." The officers typed up a consent form, which was read to appellant and signed by him. They then searched the

suitcase in his presence and found the drugs that were offered in evidence.

The typewritten consent described the suitcase and recites that appellant had been informed by the officers of his constitutional right not to have a search made without a warrant and of appellant's right to refuse consent. Richard Seibert, an assistant city attorney, testified that he was present when appellant signed the consent. Seibert stated that one of the officers read the form aloud to appellant and that before appellant signed the form, Seibert asked him if he understood what the officer was reading and if he understood that this was a voluntary act on his part. According to Seibert, appellant responded, "Yes."

Appellant testified that the consent form was not read aloud and that he signed the form because he feared for his personal safety. The trial court was at liberty to reject the testimony of appellant and to believe the testimony of the officers. *McCallum v. State,* 608 S.W.2d 222, 225 (Tex.Cr.App.1980); *Moon v. State,* 607 S.W.2d 569, 570 (Tex.Cr.App.1980).

■ We conclude that the testimony of the officer and the attorney supports the court's finding that the consent was voluntary. Foster's statement to appellant that otherwise the officers would get a warrant was not coercive. Evidently the statement was truthful because the same information that justified the arrest would have provided probable cause for a search warrant. Thus the evidence indicates that the officers could and would have obtained a proper warrant if appellant had withheld consent. The officer was not required to advise appellant expressly of his right to refuse. *Ribble v. State,* 503 S.W.2d 551, 553 (Tex.Cr.App.1974). Moreover, the consent form read to appellant and signed by him expressly acknowledges that he was informed of that right.

For the reasons stated, we hold that the trial court properly overruled appellant's motion to suppress the drugs found in the suitcase. Accordingly, the State's motion for rehearing is granted, our former opinion

is withdrawn, and the judgment is affirmed.

Affirmed.