## CLINT STEVERSON V. THE STATE.

No. 11100.   Delivered February 8, 1928.

**1.—Possessing Equipment, Etc.—Affidavit for Search Warrant—Insufficient.**

Where an affidavit for a search warrant is made wholly upon the belief of affiant, and the warrant fails to describe the place to be searched and such warrant is signed by the magistrate in blank and so delivered to the officer, same is wholly insufficient to justify the search of appellant's residence and place of habitation.  See Chapin v. State, 296 S. W. 1095, and other cases cited.

**2.—Same—Affidavit for Search Warrant—Requisites Of—Rule Stated.**

The place to be searched must be described in the warrant, and the recital that appellant was keeping "at, in and near his home, etc," is not a compliance with such requirement.  See Sec. 9, Art. 1, Constitution.  Art. 310, C. C. P.

**3.—Same—Search Warrants—Signing in Blank—Practice Condemned.**

It is not lawful for a magistrate to sign search warrants in blank, and deliver them to officers to be filled in and completed by the officer after the search is made.  Such practice is condemned.

**4.—Same—Defective Warrant—Not Cured by Discovery in Search.**

While it is true that Art. 690, P. C., provides that any instrumentality used in the presence and view of any peace officer for the unlawful storage of intoxicating liquor, or of any act made unlawful by Chap. 7, P. C., shall be seized, *without warrant* by such officer, etc.," this article is not applicable to equipment and other evidence of a violation of the liquor statutes which are discovered as a result of an unlawful search.  In other words, incriminating evidence discovered as a result of an unlawful search does not cure the defective affidavit or warrant issued thereon.

**5.—Same—Search and Seizure—Without Valid Warrant.**

Numerous decisions of this court as well as of the Supreme Court of the United States are uniform in holding that the habitation of any person cannot be invaded and searched without first obtaining a search warrant authorizing it to be done, and any evidence secured by an unlawful search is not admissible upon the trial of the owner or occupant of the property that has been unlawfully invaded.  See Arts. 4a, 4b, 690 P. C.  Agnello v. U. S., 269 U. S. 30, and other cases cited.

Appeal from the District Court of Panola County.  Tried below before the Hon. R. T. Brown, Judge.

Appeal from a conviction for the possession of equipment, etc., for the purpose of manufacturing intoxicating liquor, penalty one year in the penitentiary.

The opinion states the case.

*Woolworth & Baker* of Carthage, for appellant.

*A. A. Dawson,* State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for possessing equipment for the purpose of manufacturing intoxicating liquor, punishment being one year in the penitentiary.

Acting under a purported search warrant officers found under appellant's residence equipment which they claimed had been and could be used in manufacturing whiskey, and in appellant's smokehouse about thirty feet from the residence and in the same enclosure were found a barrel of mash and a gallon jug about two-thirds full of whiskey. When the officers were tendered as witnesses objection was interposed to them giving any evidence as to the result of the search upon the ground (a) that the search warrant under which they purported to act was not based upon a proper affidavit in that it was made wholly upon the belief of affiants; (b) that the warrant failed to describe the place to be searched, and (c) because said warrant as delivered to the officer was nothing more than a "blank search warrant" wholly insufficient to justify the search of appellant's residence and place of habitation. The bills of exception bringing these questions forward for review and the evidence taken in support of the bills and incorporated therein make it appear that every one of the objections urged were good and should have been sustained.

The affidavit recites that the two affiants "have good reason to believe and do believe" that appellant "is engaged in the unlawful sale of intoxicating liquor and keeps and possesses intoxicating liquor for the purpose of sale at, in, and near * * * his home." No fact, circumstance, or information upon which affiants' belief was predicated is stated in the affidavit. This omission rendered it wholly insufficient to authorize the magistrate to issue the warrant. Chapin v. State, 296 S. W. 1095; Stokes v. State, 296 S. W. 1108; Peppers v. State, 296 S. W. 1109; Green v. State, 296 S. W. 1109; Hodge v. State, 298 S. W. 573; Montgomery v. State, 298 S. W. 596; Lawhon v. State, 299 S. W. 413; Jenkins v. State, 299 S. W. 642.

The place to be searched is nowhere described in the warrant. This is demanded both by the Constitution (Sec. 9, Art. 1) and by the statute, (Art. 310, C. C. P.) The affidavit only pretended to charge that appellant was keeping "at, in, and near

his home," intoxicating liquor for the purpose of sale. Notwithstanding this, the purported search warrant recites that the complaint alleged that appellant and "other persons to the affiant unknown" *unlawfully transported* intoxicating liquor in a "certain wagon, buggy, automobile, wheel barrow, truck, cart, sled, sleigh, motorcycle, bicycle, horse, motor vehicle, horse drawn vehicle, aeroplane," and purports to authorize a search and seizure of all and sundry the things above enumerated. The testimony of the officers shows that frequently the justice of the peace would just sign his name to warrants and authorize the officer to put anything in it he saw fit. The entire evidence would indicate that the present warrant was so handled. We call attention to such careless and unauthorized conduct and "shotgun" warrants as only serving as it does in the present case to defeat the very purpose for which search warrants are issued.

The learned trial judge was doubtful of the validity of the warrant, but thought the testimony as to what was found in the smokehouse was admissible under the provisions of Art. 690 P. C., which provides that "any * * * instrumentality used in the presence and view of any peace officer * * * for the unlawful * * * storage of intoxicating liquors, or for the commission of any act made unlawful by (Ch. 7, P. C.) shall be seized *without warrant* by such officer, etc." This article must be construed in connection with other statutes and constitutional provisions on the same subject having also due regard to the facts of the particular case. It must be borne in mind that the officers were on appellant's premises under a warrant which clothed them with no authority whatever. The sheriff testified, "On the occasion when I went down to the defendant's house I had in my possession this paper (referring to the warrant.) I made the search that I made there of his premises by virtue of that paper." The Federal Prohibition Agent, who was with the sheriff, testified that he did not think the jug which was found in the smokehouse and which contained whiskey could have been seen from the outside by looking through the cracks. The sheriff testifying on the same point said, "I looked through the cracks in the smokehouse and saw that there was something in there. * * * When *we got in there* I saw the thirty-gallon barrel with some fluid or liquid in it. * * * I also found a gallon jug about two-thirds full of whiskey. * * * The jar or jug was out in plain view where I could easily see it from the outside of the smokehouse. I will say I could see the jug and jars setting in there, but *I don't know whether you could tell*

*there was whiskey in it* or not." The evidence is undisputed that the barrel of mash was buried in the ground and covered and could not possibly have been discovered until after the smokehouse was entered. It is equally clear that the contents of the jug could not possibly have been known to be whiskey until an examination disclosed it, after entry had been effected. Before the criminative character of the things mentioned was known to the officers they had without authority of law forced an entrance into the smokehouse. It therefore appears clear that the mash and whiskey in the smokehouse was not in "view" of the officers as contemplated by Art. 690 P. C.

Art. 727a provides that "no evidence obtained by an officer * * * in violation of any provision of the Constitution or laws of the State of Texas or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Art. 4a, C. C. P., makes it unlawful for an officer to search the residence or actual place of habitation of any person without first obtaining a search warrant authorizing it to be done, and Art. 4b C. C. P. fixes a punishment for such unauthorized search. The state could not take advantage of the officers' wrongful act in forcing an entry into the smokehouse to the hurt of him whose property rights had been violated. If without unlawful acts on their part things described in Art. 690 P. C. came to view of the officers from which it was apparent that a felony was being committed in their presence then a seizure without a warrant of the things being used to violate the law would be authorized. Under proper circumstances this course is authorized by Art. 690 P. C., Art. 212 C. C. P., and has been sanctioned under the decisions of this court and the Supreme Court of the United States in many cases. See Agnello v. U. S., 269 U. S. 30, 70 L. Ed. 148; Carroll v. U. S., 267 U. S. 132, 69 L. Ed. 543, Marron v. U. S., 72 L. Ed. 45, (Advance Sheet); Hodge v. State, 107 Tex. Crim. Rep. 579. As we understand the facts of the present case it does not come within the principle announced and recognized in the statute and under the authorities cited.

The fact that the court did not submit the count in the indictment which charged the unlawful possession of mash does not cure the error in admitting evidence of what was found in the smokehouse as it was cogent in supporting the state's case on the count upon which conviction was had.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*