**Raul AGREDANO, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. B14–83–791CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 28, 1984.

**576**

Henry C. Paine, Jr., Bryan, for appellant.

Bill R. Turner, Dist. Atty., Bryan, for appellee.

Before PAUL PRESSLER, ROBERT-SON and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

A jury found appellant guilty of possession of heroin and assessed punishment at five years confinement. Appellant presents three grounds of error relating to the trial court's review of a pre-sentence investigation report, the search and admissibility of evidence. We affirm.

In his first ground of error, appellant contends that "the Trial Court violated Appellant's due process by reviewing a pre-sentence investigation report prior to the making of determination of guilt or innocence." The record shows that Judge McDonald did in fact consider the pre-sentence investigation before appellant entered his plea. The court's "Notice of Court's Proposed Assessment of Punishment" in pertinent part provides "in the event the defendant enters a plea of guilty or nolo contendere before the Court, ... the punishment will be assessed within the range as follows: ten (10) to twenty (20) years T.D.C." The jury found appellant guilty and assessed punishment at five years confinement. On December 14, 1983 the Court of Criminal Appeals handed down its decision in *State ex rel. Bryan v. McDonald,* 662 S.W.2d 5 (Tex.Crim.App.1983). That court found Judge McDonald's procedure of issuing proposed assessments of punishment, prior to determination of guilt, to be violative of due process pursuant to Art. 1, Sec. 19 of the Texas Constitution. We do not however read the Court of Criminal Appeals decision to dictate a reversal of the case before us.

On February 4, 1983, appellant signed a written form consenting to the "Court's Inspection for Pre-sentence Report Prior to Plea of Guilty, Nolo Contendere, or Finding of Guilt." On April 2, 1983 a written "Waiver of Arraignment, Plea of Not Guilty and Request for Bench/Jury Trial," was signed by appellant and his attorney. On July 18, Judge McDonald signed the above described "Notice of Court's Proposed Assessment of Punishment" should the defendant elect to plead guilty or nolo contendere before the court.

Appellant did not plead guilty; he pleaded not guilty, and a jury found him guilty and assessed punishment at five years confinement. Judge McDonald indicated he would have assessed punishment at between ten and twenty years confinement:

(1) if appellant waived a jury trial and (2) pled guilty to the court. Neither of these events transpired and appellant has not shown how he was harmed if any violation of his rights did in fact take place.

It is well-established that an individual may consent to a state action which, without that consent, would constitute a violation of his constitutional rights. For example, effective consent to a search and seizure dispenses with the constitutional requirement of a warrant. *Nastu v. State*, 589 S.W.2d 434, 440 (Tex.Crim.App.1979). An accused is constitutionally entitled to a trial by jury; however this right is subject to waiver by the accused's effective consent. Similarly in this case, though Judge McDonald's actions may have, under some circumstances, violated appellant's right to due process, the record shows that appellant signed a written form consenting to this action. No contention is made that the consent was improperly obtained. We hold that appellant consented to any violation which may have occurred through the trial court reading the pre-sentence report prior to his pleading on guilt and innocence. Appellant makes no contention that from reading the report any other violation of his rights occurred. Appellant's first ground of error is overruled.

In his second ground, appellant asserts error in the trial court's failure to grant his motion to suppress evidence which he contends was obtained through an illegal, warrantless arrest.

Officer Clark testified that on February 1, 1983 at 4:30 p.m. he received a phone call from an informant he had known for two years. The informant had given him information in the past which had proven reliable. Officer Clark testified that the informant told him: "A Mexican male had been to where he was at and had in his possession approximately one ounce of heroin ... He gave me a description of him said he was approximately 5'10", 190 pounds, approximately 34 years old, wearing a blue jacket and eyeglasses and had about a day-old beard ... He said he was driving a green Buick with license number 808

Charles George Paul and was supposedly headed to the east part of town." When asked by the prosecutor when he first sighted the described vehicle, Officer Forester testified:

> I was westbound on 29th. I was just about a half a block away from Coulter. At that time I observed the vehicle eastbound on 29th just pulling away from Coulter.
>
> . . . .
>
> PROSECUTOR: And what did you do when you saw that car?
>
> OFFICER
>
> FORESTER: At that time I observed the vehicle, I got on my radio and advised the other units I had spotted the vehicle and that he was westbound on 29th. I drove past the vehicle trying to be inconspicuous until I could get some help there. At that time I turned around and followed the vehicle back towards 29th. The vehicle turned into an apartment complex there on 29th. I went past the vehicle. I then turned back around at that time.
>
> . . . .
>
> PROSECUTOR: Okay, you say you saw that green car pull into an apartment complex?
>
> OFFICER
>
> FORESTER: Yes, ma'am.
>
> PROSECUTOR: And what did you do next?
>
> OFFICER
>
> FORESTER: I went past the entrance to the apartment complex while I waited for some assistance. I then turned back around. I drove into the apartment complex at that time. Deputy Clark was right behind me fairly close. I went all the way back to the back of the apartment complex looking for the vehicle.
>
> PROSECUTOR: Did you find it?
>
> OFFICER
>
> FORESTER: Yes. Deputy Clark advised me that it was up front. I then turned back around and came back, and that is pretty close to the position

we took when we pulled in behind them.

. . . .

Officer Clark testified as follows:

PROSECUTOR: And did you a short time later see that green—I am sorry, did you say green car?

OFFICER

CLARK: It was a green Buick.

PROSECUTOR: Did you a short time later see that green Buick license No. 808 CGP?

OFFICER

CLARK: Yes, ma'am.

PROSECUTOR: Where did you see it?

OFFICER

CLARK: I saw it parked at 1500 East 29th, Brookside Apartments, although—

PROSECUTOR: I am asking where you saw it.

OFFICER

CLARK: Yes, ma'am.

PROSECUTOR: And who was in the car when you saw it?

OFFICER

CLARK: Mr. Raul Agredano and Ronald Lee Thomas sitting in the vehicle.

Officer Clark further testified that he approached the vehicle, identified himself as a police officer and waited for the appellant to get out. Clark then saw a weapon lying on the front floor board. When he leaned down to pick up the weapon he found a tin foil packet inside a baggie type container lying next to the weapon. This container was later determined to contain heroin.

■ We find that the above evidence shows the officers had probable cause to believe contraband would be found in appellant's car, given the United States Supreme Court "totality of the circumstances" approach to probable cause determinations. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *Bellah v. State*, 653 S.W.2d 795 (Tex.Crim.App.1983).

With respect to warrant requirements, courts have consistently distinguished searches of motor vehicles from searches of residences. The courts have not, however, gone so far as to hold that when, through an informant's tip, a peace officer is given probable cause to believe contraband is located in an occupied moving motor vehicle, the warrant requirement is automatically dispensed with. We do not so hold today, but we do find the peace officers were justified in pursuing appellant immediately upon receiving the information and, once having found the suspect in the motor vehicle as described in the tip, searching the car for the contraband. *Law v. State*, 574 S.W.2d 82, 84 (Tex.Crim.App. 1978); *Carter v. State*, 646 S.W.2d 267 (Tex.App.—Dallas 1983, no pet). The second ground of error is overruled.

■ In his third ground of error, appellant contends "the Trial Court erred in permitting reputation evidence over appellant's objection." At trial, defense counsel objected as follows:

I am going to object to any Brazos County resident testifying. Until it is shown that Rick Stewart is a resident in Laredo, Webb County, Texas, Rick Stewart is not properly qualified as his reputation in the community where he resides.

Stewart testified that he was familiar with the reputation of the appellant and familiar with his reputation in the community in which he resides. Appellant has cited no case and our research has yielded none requiring that a reputation witness be a resident of the same community in which the person whose reputation is at issue resides. Stewart testified that he was familiar with appellant's reputation in the community in which he resided and that it was bad. Appellant has never argued in either the trial court or his brief that Stewart was unqualified to testify as to reputation because he did not in fact have personal knowledge of appellant's reputation. No reversible error is shown.

The judgment is affirmed.