**Robert DELGADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 961–84.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 24, 1986.

Rehearing Denied Oct. 29, 1986.

See also 687 S.W.2d 769.

Benjamin F. Walker, court appointed, San Antonio, Roy E. Greenwood, on appeal only, Austin, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, First Asst., State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant appeals his conviction in a bench trial for possession of heroin. Article 4476–15, § 4.04, V.A.C.S. His punishment, enhanced by allegation and proof of a prior felony conviction, was assessed by the court at 35 years' confinement in the Department of Corrections. The Texarkana Court of Appeals affirmed the conviction in an unpublished per curiam opinion. *Delgado v. State* (Tex.App.—Texarkana—No. 6–83–043–CR–1984). The Court of Appeals held that the trial court did not err in overruling the motion to suppress evidence which appellant claimed was the fruit of an illegal search and seizure. We granted appellant's petition for discretionary review to determine whether the search and seizure were legal.

At approximately 7 p.m. on August 22, 1978, New Braunfels Police Officer John Cade received a telephone call from an informant who advised Cade that he had seen a 1974 silver two-door hard top Pontiac with a certain Texas license plate number near Room 108 of the Bavarian Manor Apartments. The informant told Cade the driver of the Pontiac acted "suspicious" and opened the car's trunk "and had a bag of some white substance there"; that there was "lots of traffic" at Room 108. Officer Cade knew that the occupant of Room 108 was George Thompson, who had been arrested for possession of heroin, and was on a methadone treatment program and a person "known previously to be trafficking in drugs."

Cade knew the informant, knew he had an occupation and lived in Comal County, had no criminal record and had given tips in the past which had resulted in convictions. Officer Cade told the informer to let

him know if the Pontiac returned, and the informant did just that about 8:30 p.m. that evening.

Cade went immediately to the Bavarian Manor Apartments and saw the described Pontiac just as the informant described. Appellant was standing on the driver's side, partially inside the car with the door open, talking to Thompson. Cade recognized the appellant. He had arrested the appellant on other occasions [1] and knew he had a reputation for dealing in drugs. Cade saw in plain view that the appellant was holding a package wrapped in a newspaper, and as he approached he saw a hypodermic syringe protruding out of the paper one or two inches with an orange cap on it. Cade knew what it was, based on his past experience, and it appeared to him to have something in it, "had a controlled substance in it." [2] Cade identified himself as a police officer and placed appellant Delgado under arrest for possession of narcotic paraphernalia. The package contained 17 syringes. A patrol unit was called and appellant was taken away. Officer Cade proceeded to secure the vehicle and to inventory the contents of the car as required by New Braunfels Police Department policy and practice. It was "normal procedure." Appellant had told Cade the Pontiac was his. Officer Cade took the car keys from the ignition, opened the trunk, and there found a white shirt with 12 balloons of heroin wrapped inside. A chemist testified that tests revealed the substance to be heroin.

On appeal appellant's theory is that the search of his automobile leading to the seizure of the contraband was illegal because the search was occasioned by his illegal arrest.

Article 14.01(b), V.A.C.C.P., provides:

"A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

Article 4476–15, § 4.07, V.A.C.S., in effect at the time, provided:

"A person, except a practitioner or a person acting under his direction, commits an offense if he possesses a hypodermic syringe, needle or other instrument that has in it any quantity (including a trace) of a controlled substance ... with intent to use it for the administration of the controlled substance by subcutaneous injection in a human being." [3]

Article 14.03, V.A.C.C.P., also provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

Article 14.03, V.A.C.C.P., also provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

◼ We conclude that under the facts appellant's warrantless arrest was justified under Article 14.01(b), supra. The arrest was for violation of Article 4476–15, § 4.07, supra, then in effect.[4] The standard for

---

1. The arrests of appellant by Cade were not for narcotic violations.

2. The laboratory report, introduced into evidence by the appellant, reflected the syringe had a green substance in it.

3. After the time of the alleged offense and the instant trial, Article 4476–15, § 4.07(a), V.A.C.S., was amended to read:

"A person commits an offense if he knowingly or intentionally uses or possesses with intent to use drug paraphernalia to—store,

contain, or conceal a controlled substance in violation of this Act or to inject, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act." (Acts 1981, 67th Leg., ch. 277, p. 743, eff. Sept. 1, 1981)

4. In *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr. App.1979), El Paso police officers on patrol in a high crime area observed an automobile with its dome light on parked in an alley. Sanchez, a passenger in the front seat, was showing a syringe to two people in the back seat. When walking past the car, the officer saw Sanchez

the legality of a warrantless arrest is not equal to the sufficiency of evidence for a conviction. The standard is "probable cause," not "proof beyond a reasonable doubt." *See Lewis v. State*, 598 S.W.2d 280 (Tex.Cr.App.1980); *Maloy v. State*, 582 S.W.2d 125 (Tex.Cr.App.1979); *Hernandez v. State*, 523 S.W.2d 410 (Tex.Cr.App.1975). Thus the fact that the hypodermic syringe in the instant case later was shown by a laboratory report not to contain a controlled substance, contrary to Officer Cade's impression at the scene, is of no consequence. We need not consider whether the warrantless arrest was also proper under Article 14.03, supra, as the State urges. Officer Cade effected a valid custodial arrest. The question remains whether the subsequent search of the car's trunk was legal?

■ The State argues that the search was a proper inventory search. Of course, the burden of proving a proper inventory search is on the State. *Benavides v. State*, 600 S.W.2d 809 (Tex.Cr.App.1980).

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), it was held that inventories conducted pursuant to standard police procedures are reasonable. The purpose of an inventory is to protect the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police from potential dangers. Further, in *Opperman* the Court found no need to consider the existence of less intrusive means of protecting the police and the property in their custody—such as locking the car or impounding it in safe storage under guard.

One of the instances in which an automobile may be validly impounded and inventoried is where the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available other than impoundment to insure the

protection of the vehicle. *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App.1978); *Christian v. State*, 592 S.W.2d 625 (Tex.Cr.App. 1980); *Benavides v. State*, 600 S.W.2d 809 (Tex.Cr.App.1980); *Daniels v. State*, 600 S.W.2d 813 (Tex.Cr.App.1980); *Backer v. State*, 656 S.W.2d 463 (Tex.Cr.App.1983); *Stephen v. State*, 677 S.W.2d 42 (Tex.Cr. App.1984). In the instant case the appellant's automobile was parked in front of the Bavarian Manor Apartments near Room 108 where a known drug user lived, and where there had been "lots of traffic." No other person was available to take custody of the car; therefore, impoundment was necessary to secure protection of the vehicle. It was shown that the New Braunfels Police Department required such inventories as a matter of policy and practice.

The Court of Appeals recognized the proper basis for an inventory, but concluded that because of the holding in *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981), the search of the trunk could not be upheld as an inventory because Officer Cade took the keys from the ignition in order to open the trunk. In *Gill*, we held that the forcible entry of a locked trunk of a car during an inventory was an unlawful intrusion under both the federal and state Constitutions. The police in *Gill* employed the aid of a wrecker driver to remove the back seat of the vehicle in order to gain access to the trunk and to tow the vehicle to a private storage facility. Had the police not forced their way into Gill's trunk, the police would have had no means of access and would have been free from any claims of tampering with appellant's property located in the trunk of the car.

In *Stephen v. State*, 677 S.W.2d 42 (Tex. Cr.App.1984), *Gill* was distinguished on its facts. There this Court wrote:

holding a syringe with a bottle cap. Other articles were on the glove compartment lid. There it was held that the officers had probable cause to arrest after they saw appellant display the syringe and other paraphernalia. In the instant case there was no bottle cap, but the officer saw

what he believed to be controlled substance in the syringe, had just had the tip about appellant's activity and the "traffic" at Room 108, knew the appellant and his reputation, and knew Thompson, occupant of Room 108 and his reputation.

"In the instant case there was no forced entry. Officer Caraway removed the car keys from the ignition and proceeded to inventory the contents of the trunk. As a means of protection against possible future claims of the theft of property by the police from the trunk, the officers properly conducted an inventory of the trunk of the car. *Williams v. State,* 621 S.W.2d 613, 615 (Tex.Cr.App.1981)."

See also *Kelley v. State,* 677 S.W.2d 34 (Tex.Cr.App.1984), and *Guillet v. State,* 677 S.W.2d 46 (Tex.Cr.App.1984), which also distinguish *Gill.*[5]

The facts here are like those in *Stephen* and are likewise distinguishable from *Gill.* We conclude as in *Stephen* that Officer Cade conducted a proper inventory of the trunk of appellant's car.

We need not, however, rest our decision upon a proper inventory alone. Like the Court of Appeals, we rest our decision upon probable cause to search the trunk of the Pontiac automobile.

In *Nastu v. State,* 589 S.W.2d 434, 438 (Tex.Cr.App.1979), cert. den. 447 U.S. 911, 100 S.Ct. 300, this Court wrote:

" ... It is well established that a search conducted without a warrant issued on probable cause is *per se* unreasonable and that the warrant requirement is subject only to a few well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions arises, under certain circumstances, when there is probable cause to search an automobile. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). This exception exists in part because the circumstances that furnish probable cause to search a particular auto are most often unforeseeable and the opportunity to search is fleeting since a car can be readily moved. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). But this exception is not absolute. *Chambers* and *Carroll* teach us that the expectation of privacy, and hence the protection afforded it, is lower in automobiles than it is in houses or offices. But automobiles are still protected by the Fourth Amendment and there must be probable cause to search *and* exigent circumstances which make acquisition of a warrant impracticable in order to search without one. *Scott v. State,* 531 S.W.2d 825 (Tex.Cr.App.); *Reed v. State,* 522 S.W.2d 916 (Tex.Cr. App.)."

■ It has also been said that a warrantless search of an automobile based upon probable cause will be upheld so long as exigent circumstances make obtaining a warrant impractical. *Gauldin v. State,* 683 S.W.2d 411 (Tex.Cr.App.1984).

The question of whether a warrantless search is constitutionally valid can only be decided in terms of the concrete factual situation presented by each individual case. *Rivas v. State,* 506 S.W.2d 233, 235 (Tex. Cr.App.1974); *Nastu v. State,* supra at p. 438.

Probable cause exists when the facts within the knowledge of the officer on the scene and those of which the officer had reasonably trustworthy information would lead a person of reasonable caution and prudence to believe that he would find evidence pertaining to a crime. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Craddock v. State,* 553 S.W.2d 765 (Tex.Cr.App.1977), cert. den. 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (1977). A search of a car trunk may be justified by specific articulable facts that give probable cause to believe the contraband is concealed in the trunk. When a peace officer possesses probable cause that a motor vehicle contains contraband or instrumentalities of crime, a valid search can be conducted in the area of the vehicle where facts justify the officer's belief that such evidence is there concealed. *Christopher v. State,* 639 S.W.2d 932 (Tex.Cr.App.

**5.** These cases distinguishing *Gill* had not been decided at the time of the Court of Appeals' opinion.

1982); *Law v. State,* 574 S.W.2d 82 (Tex.Cr. App.1978). Thus a search of a car trunk may be justified by specific articulable facts that give probable cause to believe the contraband is concealed in the trunk.

Officer Cade received information from a previously reliable informant that a certain described Pontiac was parked near Room 108 at the apartment complex in question; that the driver acted "suspicious" and had opened the Pontiac's trunk and had therein a bag of white substance which he opened; that there was "lots of traffic" at Room 108; that Cade had received reports of illegal activity in that neighborhood from "different people, different informants." Cade knew that Thompson, a drug user who trafficked in drugs, lived at Room 108. After receiving a second call from the informant the Pontiac had returned to the scene, Cade went to the Bavarian Manor Apartments about 8:55 p.m. There he saw the Pontiac as described by the informant parked near apartment 108. Appellant was standing on the driver's side with the door open, his body partially inside the vehicle. He was talking to Thompson. Cade recognized appellant as a man he had arrested, and who had a reputation for dealing in drugs. Appellant was holding a package with a hypodermic syringe with substance apparently in it protruding therefrom. Appellant was arrested.

From the information Officer Cade had received, from the knowledge he had, and from what he observed upon arriving at the scene, he had probable cause to believe contraband would be found in appellant's car given the "totality of the circumstances" approach. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Eisenhauer v. State,* 678 S.W.2d 947 (Tex. Cr.App.1984) (applying the *Gates* standard to a warrantless arrest); *Agredano v. State,* 675 S.W.2d 575 (Tex.App.—Houston [14th Dist.] 1984). See also *United States v. Head,* 693 F.2d 353 (5th Cir.1982). Having probable cause to search, Officer Cade found that it was after nine o'clock at night when magistrates are not normally on duty, that the Pontiac was parked near Room 108 where there earlier had been reports of "lots of traffic." Thompson, the occupant of Room 108, was not arrested.

In *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), it was written:

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. *For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."* (Emphasis added.)

In *United States v. Ross,* supra, the Supreme Court held that police officers who had legitimately stopped an automobile and who had probable cause to believe that

contraband was concealed somewhere within it could conduct a warrantless search of the vehicle as thorough as a magistrate could authorize by warrant, since the scope of the warrantless search of an automobile is not defined by nature of the container in which the contraband is secreted, but rather, it is defined by the object of the search and places in which there is probable cause to believe that it may be found. *Ross* overruled *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 59 L.Ed.2d 644, and modified *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235.

We conclude that it was not necessary for Officer Cade to have secured a search warrant before searching. The warrantless search was valid. The court did not err in admitting the evidence seized from the trunk of the car. See *United States v. Ross,* supra; *Craddock v. State,* supra; *Scott v. State,* 531 S.W.2d 825 (Tex.Cr.App. 1976). See and cf. *Montez v. State,* 608 S.W.2d 211, 217 (Tex.Cr.App.1980) (Opinion on rehearing).

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

The majority concludes that a warrantless arrest authorized by Article 14.01(b), V.A.C.C.P., may be justified by "probable cause." However, by its terms, Article 14.01(b), allows an officer to arrest "an *offender*" and requires that the offense be "*committed* in his presence or within his view." (emphasis supplied.)

"That language clearly implies that all the elements necessary to be proved to sustain a conviction of the accused must exist to give a police officer the authority to arrest him without a warrant." *Heath v. Boyd,* 141 Tex. 569, 175 S.W.2d 214, 216 (1943). "[A] peace officer has no authority to make an arrest without a warrant except when the offense is committed in his presence or within his view....," *King v. State,* 132 Tex.Cr.R. 200, 103 S.W.2d 754

(1937). Compare *Steverson v. State,* 109 Tex.Cr.R. 11, 2 S.W.2d 453, 454–455 (1928), with *January v. State,* 117 Tex.Cr.R. 223, 34 S.W.2d 1097 (1930).*

Therefore, to make a valid warrantless arrest under Article 14.01(b), a peace officer needs more than probable cause. The offender must actually commit an offense in his presence or view.

On another matter, the majority treats an argument by the State that the search in question was a proper inventory search. However, the State lost that argument in the court of appeals. The State did not petition this Court to review that part of the decision of the court of appeals. According to the rules of this Court, propriety of the alleged inventory search is not before us, and the majority errs in addressing it.

On both bases I respectfully dissent.

---

* There are a host of "liquor cases" like *Steverson* and *January* reported during Twenties and early Thirties, in which validity of arrest and inevitable search turned on whether an offense was being committed in their presence or within their view.