In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00179-CR
______________________________


NGAI WILLIAMS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 04F0290-008


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            A Bowie County jury found Ngai Williams guilty of manufacture of a controlled substance. 
After determining that Williams had been previously convicted of two felony offenses, which
enhanced the range of punishment to twenty-five to ninety-nine years or life imprisonment and a fine
not to exceed $100,000.00, the jury assessed punishment at sixty years' imprisonment and a fine of
$100,000.00. Williams contends the trial court erred in two respects: (1) failing to suppress the
evidence recovered from a search of the vehicle he was operating and (2) failing to instruct the jury
concerning the legality of the search. We affirm the judgment of the trial court.
Background Facts 
            At a pretrial suppression hearing, Mike Jones, a police officer with the Texarkana, Texas
Police Department, testified he received information that a black male had some type of chemical
in a jar and was using a microwave oven in the lobby of a motel on North State Line Avenue in
Texarkana, Texas, to heat objects and test the color of litmus paper strips. Based on his experience,
Jones believed such activity was consistent with manufacturing drugs. The motel clerk verified the
information and gave Jones a partial license plate number and a vehicle description. While Jones
was at the motel parking lot, an automobile arrived which had a license plate partially matching the
description. Jones stopped the vehicle and asked the driver to step out of the vehicle. The driver's
license identified the driver of the vehicle as Williams. After asking if Williams had any weapons
or narcotics on his person, Williams consented to a search of his person, which did not reveal any
illegal substances or weapons. However, Williams refused to consent to a search of his vehicle. 
Jones then checked to determine if any outstanding warrants existed for Williams and discovered
that two warrants existed, one for a parole violation and another for forgery. Jones arrested
Williams, handcuffed him, and placed him in custody in his patrol car. Jones testified that he and
Officer Price then conducted an inventory search of the vehicle in accordance with departmental
policy. Jones gained entry into the trunk by folding down the back seat, and he observed a
microwave oven and was "overwhelmed" by a chemical odor that he associated with the manufacture
of methamphetamine. Jones and Price opened the trunk of the vehicle with the key and found a clear
jar containing a bi-layer liquid and a white jug marked "muratic [sic] acid." Jones testified that, in
his experience, these substances are used in methamphetamine laboratories. At that point, Jones
notified his supervisor to send someone with knowledge of the proper handling of such chemical
substances. Officer Coy Murray arrived to assist. 
            On cross-examination, Jones admitted that he did not have probable cause to arrest Williams
immediately when he stopped him. It took an additional five or ten minutes to complete the warrant
search. According to Jones, it is police department policy to conduct an inventory search if a person
is arrested and removed from the vehicle and there is no other person available to take possession
of the vehicle. Jones further testified that the police department policy did not allow opening a
locked container during an inventory search. Also in the trunk were some tools and a large, locked
duffel bag. Murray took possession of the duffel bag and opened it, as he felt he had probable cause
to do so. 
            Murray testified that he talked with Jones. Murray then saw the muriatic acid, the bi-layer
liquid, and the microwave oven and testified these are commonly used in the manufacture of
methamphetamine. He also detected an odor consistent with drug manufacturing. Also in the trunk
were some pots and pans that had some residue consistent with a methamphetamine laboratory. He
then opened the duffel bag by forcing the lock on one side. Inside the duffel bag, he found bottles,
duct tape, and what appeared to be ephedrine, iodine crystals, and red phosphorus. Murray then
called the Drug Enforcement Administration and Summit Environmental to get a cleanup team on
site. The hazardous materials were taken away by the cleanup team and destroyed. Murray testified
he did not seek a search warrant for the duffel bag because it was part of the inventory, it could be
hazardous, and it is departmental policy to open the bag to inventory it. At trial, a chemist testified
the bottle containing a clear liquid, two jars containing clear liquids, and coffee filters found in the
duffel bag tested positive for methamphetamine. 
            At the conclusion of the suppression hearing, both the State and Williams argued that the
issue was the legality of the search as an inventory of the vehicle. After the parties submitted briefs,
the trial court overruled the motion to suppress. 
            At trial, the same evidence was also admitted before the jury. Additionally, Williams
introduced the written policy of the Texarkana, Texas Police Department concerning an inventory
search. The policy is a multi-page document setting forth the procedures required of police officers
in executing an inventory search. Among other things, the policy states: "Any closed container
found in the vehicle will be searched only after permission from the owner or if probable cause exists
or search warrant is obtained." 
            Williams argues the search of the locked duffel bag was improper as he did not consent, no
search warrant was obtained, and no probable cause existed. The State counters that, when the
locked duffel bag was found, the police officers had probable cause to reasonably believe the duffel
bag contained evidence pertaining to a crime. Therefore, the search of the duffel bag was proper
based on the existence of probable cause. Additionally, the existence of probable cause allows the
police officers to open locked containers when conducting an inventory, according to a written
departmental policy. 
Admissibility of Evidence Found in Locked Bag
            At the suppression hearing, the State, Williams, and the trial court focused their attention on
whether the search was authorized as an inventory. There was some conflicting testimony on that
issue from the police officers. The trial court requested briefs from the parties. Williams' brief
pointed out that Jones testified that it was the policy of the Texarkana, Texas Police Department not
to open closed containers while conducting an inventory search, that the duffel bag was locked, and
therefore, the opening of the bag violated departmental policy and could not be justified as an
inventory. The trial court upheld the search as a proper inventory search and also found that opening
the duffel bag was necessary for the environmental team to properly dispose of the dangerous
chemicals. 
            At trial, and particularly after the written departmental policy was introduced, the parties
argued the issue of probable cause. We believe the issue of probable cause is dispositive. In
reviewing a trial court's decision concerning a motion to suppress, we generally consider only
evidence adduced at the suppression hearing, since the ruling was based on that evidence, rather than
evidence introduced later in the trial. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996);
Clark v. State, No. 06-03-00262-CR, 2004 WL 2290262 (Tex. App.—Texarkana Oct. 13, 2004, pet.
ref'd) (mem. op.) (not designated for publication); Green v. State, 78 S.W.3d 604, 608 (Tex.
App.—Fort Worth 2002, no pet.); Westfall v. State, 10 S.W.3d 85, 89 n.1 (Tex. App.—Waco 1999,
no pet.). However, when the legality of the seizure is relitigated at trial, consideration of relevant
trial testimony is appropriate in our review. Rachal, 917 S.W.2d at 809. In this case, the evidence
concerning the facts of the search introduced at the suppression hearing and that evidence presented
at trial were almost identical. The primary difference was the arguments advanced based on those
facts—at the suppression hearing, Williams attacked the search as being an improper inventory, the
State defended the search on that basis, and the trial court ruled on the basis of an inventory. At trial,
the State presented the same factual scenario, but also advanced the theory that the search of the
locked duffel bag was justified because, at the time of the search, the police officers had developed
probable cause to reasonably believe evidence pertaining to a crime was in the duffel bag. 
            The admissibility of evidence is within the discretion of the trial court and will not be
reversed absent an abuse of discretion. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). 
Even when the trial court gives the wrong reason for the decision, if the decision is correct on any
theory of law applicable to the case, it will be sustained. Osbourn v.State, 92 S.W.3d 531, 538 (Tex.
Crim. App. 2002). 
            Under the Carroll doctrine,


 if probable cause has been developed, an officer may, without
a warrant, stop and search a moving vehicle. There is now only one rule to govern automobile
searches based on probable cause—the police may search an automobile and the containers within
it where they have probable cause to believe contraband or evidence is contained. California v.
Acevedo, 500 U.S. 565, 580 (1991). Probable cause exists when the facts within the knowledge of
the officer on the scene and those of which the officer had reasonably trustworthy information would
lead a person of reasonable caution and prudence to believe that evidence pertaining to a crime
would be found. See Delgado v. State, 718 S.W.2d 718, 722 (Tex. Crim. App. 1986) (citing United
States v. Ross, 456 U.S. 798 (1982); Craddock v. State, 553 S.W.2d 765 (Tex. Crim. App. 1977)). 
When a peace officer possesses probable cause that a motor vehicle contains contraband or
instrumentalities of a crime, a valid search can be conducted in the area of the vehicle where facts
justify the officer's belief that such evidence is there concealed. Delgado, 718 S.W.2d at 722. The
test for determining probable cause is an objective one. A search could be upheld even if the officer
subjectively thought probable cause was lacking, if it in fact existed. See Esco v. State, 668 S.W.2d
358, 366 (Tex. Crim. App. [Panel Op.] 1984) (op. on reh'g). Williams does not contend the initial
stop was improper. His argument is that the search of the duffel bag was an improper inventory
search and lacked probable cause. When the duffel bag was opened, the officers had the following
information: (1) a report that a male was using a microwave oven at a motel to test litmus paper
strips and to heat objects, (2) a description of the vehicle the man occupied and a partial license plate
number, (3) a person so described drove onto the motel parking lot in an automobile matching the
partial number of the license plate, (4) the driver, Williams, was found to have two outstanding
warrants, (5) after arresting Williams on the outstanding warrants and during an inventory of the
interior portion of the automobile, officers discovered a microwave oven and the "overwhelming"
odor that the officers, from their experience, associated with the manufacture of illicit drugs, (6) after
opening the trunk of the vehicle with the key, the officers found a bottle consisting of a bi-layer
liquid and another bottle marked as "muratic [sic] acid," and (7) the officers testified that, in their
experience, these substances were used in the manufacture of methamphetamine. At this point, the
officers found the duffel bag in the trunk and Murray opened it by forcing a zipper. Considering all
the facts and circumstances known to the officers at that time, we believe the officers were
reasonably justified in concluding that evidence pertaining to a crime could be found in the duffel
bag. Once there is probable cause to believe the vehicle contains contraband, a warrantless search
may be conducted to the same extent as if a search warrant had issued. Every part of the vehicle and
any container in the vehicle that may conceal the object of the search may be examined. Ross, 456
U.S. at 825. The first point of error is overruled.
Failure to Instruct Jury Concerning Legality of the Search
            Williams argues the trial court erred in failing to instruct the jury on how to interpret whether
the officers acted illegally. Article 38.23 of the Texas Code of Criminal Procedure provides that
evidence obtained in violation of the law shall not be used in a criminal case and a jury shall be
instructed that evidence so obtained should be disregarded. Tex. Code Crim. Proc. Ann. art. 38.23. 
Williams submitted a proposed jury instruction that specifically instructed the jury on the
requirements of an inventory search. Among other things, the proposed instruction stated: 
An inventory search is reasonable and lawful under the Fourth Amendment to the
United States Constitution only if it is conducted for the purposes of an inventory and
may not be used by police officers as a ruse for general rummaging in order to
discover incriminating evidence. Under the Fourth Amendment to the United States
Constitution, a peace officer may open a closed container as a part of an inventory
of an automobile as long as the inventory is conducted in good faith pursuant to
reasonable standardized police procedures. 

The trial court denied this requested jury instruction, but instructed the jury in accordance with
Article 38.23 that evidence obtained in violation of the law should not be admitted and if the jury
found, or had a reasonable doubt, that evidence introduced in the case was obtained in violation of
the law, the jury should disregard such evidence. 
            It is elementary that it is the duty of the court to determine the law and the duty of the jury
to determine the facts. If the only issue involved in determining if certain evidence is admissible is
a question of law, the court makes that decision, not the jury. In the event there are disputes about
the underlying facts which authorize an officer's search, the jury should be allowed to determine
those factual disputes. "[A]n Article 38.23 instruction must be included in the jury charge only if
there is a factual dispute about how the evidence was obtained." Garza v. State, 126 S.W.3d 79, 85
(Tex. Crim. App. 2004). In this case, there is no factual dispute about how the evidence was
obtained. The only "dispute" is the apparent disagreement by two officers about the interpretation
of the Texarkana, Texas Police Department's policy on inventory searches—one officer thought the
policy allowed opening closed containers while doing an inventory and the other officer did not. 
Traditionally, the factual dispute allowing an Article 38.23 instruction would involve the facts on
the incident in question (Did the defendant run the red light thereby authorizing the arrest?). A
disagreement with the conclusion that the grounds for the search were shown as a matter of law is
not the same as controverting the facts. The question of whether the search was legal is a question
of law if none of the circumstances surrounding the search was controverted. See id. In that event,
the court is not required to submit the proposed Article 38.23 instruction. However, we also note
that in Garza, the Texas Court of Criminal Appeals implied that the alleged violation of
departmental policy might require an Article 38.23 instruction. In Garza, the court found an
instruction was not required since the city's policy had not been admitted in evidence. Garza, 126
S.W.3d at 87. Because of that discussion in Garza, we will consider the issue.
            When there is a dispute in the facts concerning whether evidence was obtained in violation
of the law, an instruction to the jury concerning Article 38.23 is required. This Court has held that,
when such instruction is necessary, the trial court should provide the jury with both abstract
statements of the applicable law and should also apply the law to the evidence in the case. Davis v.
State, 905 S.W.2d 655, 663 (Tex. App.—Texarkana 1995, pet. ref'd) (citing Riley v. State, 830
S.W.2d 584, 586–87 (Tex. Crim. App. 1992)). This requirement applies to defensive issues as well
as to the law of the offense. See Beggs v. State, 597 S.W.2d 375, 379–80 (Tex. Crim. App. [Panel
Op.] 1980). 
            The instruction proposed by Williams focused on the requisites for an inventory search. The
proposed instruction concludes by advising the jury that, "if you find the facts so to be, or you have
a reasonable doubt thereof, you will wholly disregard such evidence recovered in the search of the
vehicle, and not consider it as any evidence whatsoever." (Emphasis added.) Such a broad
instruction would have prevented the jury from considering any evidence found in the vehicle, even
though such evidence was admissible independently of the inventory. The instruction was improper
because the jury was entitled to consider the evidence gained from the search. Such evidence was
properly presented to the jury since the police officers had probable cause to conduct the search. We
hold that the proposed jury instruction, as worded, was improper and that the trial court correctly
refused to submit it to the jury. The second point of error is overruled.
            We affirm the judgment of the trial court. 





                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 13, 2006
Date Decided:             August 3, 2006

Do Not Publish