

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00493-CR

BRENCE J. WALKER                                                            APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1335687D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Brence J. Walker appeals his conviction for the unlawful possession of a firearm by a felon. Walker argues that the trial court erroneously overruled his motion to suppress evidence of two firearms found when police inventoried the vehicle he had been driving just prior to his arrest. We will affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## II. Background

After the State charged Walker, he filed a motion to suppress, which the trial court "carried . . . with the case," withholding a ruling until the State had concluded its case-in-chief. At trial, Fort Worth Police Officer Daniel Evans testified that on July 25, 2013, he and other members of the "Zero Tolerance Unit" were watching a location suspected of being a narcotics trafficking hot point. Evans was also checking the license plates of passing vehicles to see if there were arrest warrants associated with those vehicles. Evans said that one of the persons the unit was looking for was Walker because arrest warrants had been issued for him. Evans testified that he ran the plates of a gray Chevrolet Impala that passed by and that his system indicated that Walker was associated with the vehicle. Evans stated that in short order, Walker pulled into a local convenience store, and that after Walker exited the car and went inside, Evans called for assistance and then went inside to arrest Walker.

According to Evans, Walker initially hesitated to accompany Evans to his patrol vehicle, but he said that after Evans "threatened to use [his] taser on him," Walker complied. Evans said he then placed Walker under arrest and sat him in the backseat of a patrol vehicle. Evans said that he looked through the window of the Impala and saw a dog and a backpack in the front right passenger seat. By Evans's account, he ordered the vehicle inventoried and impounded given the vehicle's location—a location that Evans said is a high-crime area and an area where Chevrolet Impalas specifically are stolen. Evans also said that two fellow

2

officers arrived to conduct the inventory on the Impala and that Evans drove Walker to jail.

The Fort Worth Police Department's impoundment policy, which was admitted during Evans's time on the stand, states that an officer may impound a vehicle and inventory it when, among other conditions, the "driver is removed from the vehicle and placed under arrest, there is reasonable connection between the arrest and the vehicle, and no other alternatives are available other than impoundment to ensure the protection of the vehicle." Specifically testifying to Evans's decision to impound the Impala, Evans said that Walker was no longer in the vehicle, that he had placed Walker under arrest, and that there was a reasonable connection between arresting Walker and the vehicle in that there was an arrest warrant out for Walker which specifically referenced the license plates, color, make, and model of the vehicle that Walker was driving. Evans also said that Walker was associated with the vehicle because Walker had just exited it after having pulled in to the convenience store.

Evans said that at the time he ordered the vehicle impounded, there were no other alternatives to impoundment. Evans also expressed concern for the dog in the vehicle, citing that it was a hot day and the windows to the vehicle were rolled up. Evans averred, however, that the owner of the vehicle arrived after he had left the convenience store and after fellow officers began their inventory of the vehicle.

3

Fort Worth Officer Jason Morehouse testified that when he arrived to assist Evans, Evans had already handcuffed Walker and placed him in the backseat of a police vehicle. Morehouse said that by that time, the Impala had already been designated for impound and a wrecker had been called to transport the vehicle to the city pound. Morehouse testified that it was department policy that before allowing a vehicle to be towed, police "conduct an inventory of the inside of the vehicle." According to Morehouse, the policy behind this procedure is to ensure the safety of the person's personal property and to protect the police department from liability. Morehouse said that at the time he began an inventory of the vehicle, the only person connected with the vehicle was Walker. Morehouse also said that the department's impound policy had been followed in that Walker was arrested shortly after exiting the vehicle and that there was a reasonable connection between that arrest and the vehicle in that the warrant for Walker's arrest also associated Walker with the vehicle. And like Evans, Morehouse said that the vehicle should not be left alone in that neighborhood.

Morehouse said that his inventory of the Impala was "pretty clean" except that he did find a backpack on the front passenger side of the vehicle. Among other items, Morehouse found two handguns inside the backpack as well as "several loose bullets" and multiple magazines for both guns. The State introduced and published photographs of these items and had Morehouse describe them to the jury.

According to Morehouse, the "registered owner of the vehicle" arrived after he had inventoried the vehicle but prior to the wrecker's arrival. Thus, Morehouse released the vehicle to the owner and she took the dog with her. Morehouse averred that he did not know how the registered owner knew to come to the convenience store to retrieve the vehicle. Morehouse also testified that because the vehicle had already been designated for impoundment and inventoried, per department policy, he could have declined to release the vehicle to the registered owner and instead required her to complete the impound process by retrieving her vehicle from the city pound.

After the close of evidence, the trial court denied Walker's motion to suppress. In its findings of fact, the trial court found that Evans arrested Walker after Walker had "pull[ed] into a parking lot and enter[ed] a gas station." In its conclusions of law, the trial court concluded that Evans's actions constituted Walker having been "removed from the Impala." The trial court also concluded that "Evans and . . . Morehouse followed the Fort Worth Police Department policy on impoundment and inventory of a motor vehicle."

The jury returned a verdict of guilty to the State's charge of unlawful possession of a firearm by a felon. After a punishment hearing, and predicated on its enhancement findings, the trial court sentenced Walker to thirty-two years' confinement. The trial court entered judgment accordingly, and this appeal followed.

5

## III. DISCUSSION

In four subtitled points, all of which are subsumed within one overarching argument, Walker argues that the trial court erred by overruling his motion to suppress. In his brief, Walker cites to both state and federal authorities pertaining to his rights concerning searches and seizures, but he does not distinguish his state and federal claims. *See* U.S. Const. Amend. IV, V, XIV; Tex. Const. art. I, §§ 9, 10, 19; *see also* Tex. Code Crim. Proc. Art. 38.23 (West 2001). Because Walker's briefing does not provide specific arguments or authorities to distinguish his state-law claims from his federal-law claims, we will limit our analysis to the Fourth Amendment. *See Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002).

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App.

6

2006).  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.  *Kelly*, 204 S.W.3d at 818–19.  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

### B.    The Fourth Amendment and Inventories

The Fourth Amendment protects against unreasonable searches and seizures by government officials.  U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at

7

24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A peace officer's inventory of the contents of an automobile is permissible under the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976); *see also Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980). Inventories serve to protect (1) the owner's property while it is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Opperman*, 428 U.S. at 369, 96 S. Ct. at 3097. Inventories must be conducted in good faith pursuant to reasonable standardized police procedures. *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S. Ct. 738, 742 (1987).

Reasonable cause for impoundment of an automobile may exist when the driver is removed from his automobile and placed under custodial arrest and his

8

property cannot be protected by any means other than impoundment. *Lagaite v. State*, 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The State bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to insure the automobile's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Delgado v. State*, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986).

## C.    The Trial Court Did Not Err

Here, the trial court heard evidence that Walker was arrested shortly after he exited the Impala. The trial court further heard evidence that no alternatives other than impoundment were available to ensure the Impala's protection and that the Impala was particularly in harm's way given its make and model and the neighborhood where the police arrested Walker. The trial court had before it the Fort Worth Police Department's inventory policy. And the State introduced the testimony of two officers who averred how the policy had been followed.

Walker argues that he was not "removed" from his vehicle because he had exited the Impala and gone into the convenience store before Evans arrested him. But Morehouse testified that Evans's arrest of Walker immediately after Walker had exited the Impala constituted "removal" under the department's policy. And even though Evans's testimony is somewhat confusing in his responses to defense counsel's questioning regarding what constituted "removal," Evans affirmatively testified during the State's questioning that his

9

arrest of Walker constituted removal under the department's policy. We must assume that any conflict found in Evans's testimony was resolved by the trial court in favor of its ruling. *See Amador*, 221 S.W.3d at 673. We hold that the trial court did not err by overruling Walker's motion to suppress.

## IV. CONCLUSION

Having overruled Walker's points in their entirety, we affirm the trial court's judgment.


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 11, 2016

10