COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JUAN ANTONIO GUTIERREZ, | § | No. 08-18-00194-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| THE STATE OF TEXAS | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC# 20140D03047) |

## **O P I N I O N**

A jury found Appellant, Juan Antonio Gutierrez, guilty of driving while intoxicated, enhanced to a felony because of at least two previous convictions for the same conduct. He was sentenced to eight years' imprisonment. On appeal, Appellant argues that the trial court improperly denied his pre-trial motion to suppress because law enforcement lacked reasonable suspicion to conduct an investigative stop or probable cause to arrest him. For these same reasons, he also argues that the evidence is insufficient to support his conviction. Because we conclude the issues are without merit, we affirm the judgment.

## **I. BACKGROUND**

Appellant was arrested in the parking lot of a shopping center in the early morning hours after a business owner, who was getting ready to open his business, called 911 to report that Appellant's vehicle was in the parking lot. The 911 caller related a history of confrontations with

Appellant, who was "always drinking." The responding officer arrived on the scene as Appellant was backing his vehicle out of a parking space. Following their interaction which we detail below, the responding officer arrested Appellant for driving while intoxicated; a subsequent breath test recorded his alcohol concentration level at 0.179 g/210L. Appellant stipulated at trial to four prior driving while intoxicated convictions as alleged in his indictment. Prior to trial, Appellant filed a motion to suppress the evidence obtained as a result of the investigatory stop.

### A. Pretrial Motion to Suppress

During the suppression hearing, Socorro Police Department Sergeant Li Wei Rosario testified that she was dispatched in response to a 911 disturbance call. The caller complained that Appellant's vehicle was parked in front of the caller's business, something Appellant had been repeatedly asked not to do. Further, the caller reported that Appellant may be intoxicated. The caller described that Appellant drove a brown Ford pickup with a "Johnny's Tire Shop" logo on the rear window.

When Sergeant Rosario arrived at the address, she discovered a truck backing out of a parking space that exactly matched the description provided. Sergeant Rosario parked her patrol unit behind Appellant's truck to investigate. In her initial interaction with Appellant, she noticed that he had red, bloodshot eyes, slurred speech, and emitted an odor of alcohol from his breath and person. He stated that he had consumed only three beers.

From her prior experience, Sergeant Rosario knew that Appellant owned a tire store a few stores down in the shopping center. Sergeant Rosario had responded to prior disturbance calls involving Appellant and his wife where Appellant was intoxicated at his own business and around neighboring businesses.

2

The State introduced Sergeant Rosario's dash cam video that depicted Appellant's performance on the field sobriety test. Sergeant Rosario testified that Appellant failed the field sobriety tests. Her testimony does not elaborate on any specifics of the tests, other than Appellant could not follow instructions or keep his balance. After conducting the tests, Sergeant Rosario placed Appellant under arrest and read him his DIC and *Miranda* warnings.

Department of Public Safety Trooper Ezekiel Schultz, a Socorro Police Department Officer at the time of Appellant's arrest, transported Appellant to the Socorro Police Department substation and administered a breath alcohol test. While Appellant was seated in the back of the patrol unit, Trooper Schultz could smell alcohol coming from him, and noticed he had slurred speech and red, bloodshot eyes.

The State also introduced the audio recording of the 911 call during the suppression hearing. The caller did not provide his name, but stated that he owns Liberty Star Insurance, and provided the address and suite number for the business. He indicated that Appellant leases Johnny's Tire Shop, which is 100 yards away from his business, and that Appellant is "always parking in front of my business. He's always drunk. He's always drinking." The business owner described Appellant's vehicle as a brown Ford truck with a utility box in the bed and a Johnny's Tire Shop decal on the back window.

The caller further stated that he asked Appellant not to park in front of Liberty Star because parking is limited. Nonetheless, Appellant's car had been parked in front of the insurance business for the last 30 minutes, and the caller was going to open the establishment at 8 a.m. The caller also related that he previously asked Appellant not to enter the Liberty Star business, but Appellant entered the business and behaved in a confrontational manner, as if he wanted to "start something." The caller did not want to meet law enforcement at the scene, because he wanted to avoid a

3

confrontation with Appellant. He stated that Appellant acted like he wants to get into a fight when the caller asked him to move his vehicle.

## B. Trial Court's Findings of Fact and Conclusions of Law

After listening to the 911 call and watching Sergeant Rosario's dash cam video, the trial court made the following relevant findings of fact:

(3) On March 7, 2014, Officer Li Wei Rosario[1] responded to a call made by a witness to report a disturbance involving a possible intoxicated driver parked in the parking lot in front of a business.

(4) Officer Rosario was credible when she testified that she was relying on information that the disturbance involved a possible intoxicated person.

(5) Officer Rosario received a description of a brown pickup truck with a logo that said "Johnny's Tire Shop" in the rear window.

. . .

(7) The Court finds the testifying witness Officer Rosario was credible in her testimony that the said vehicle was in motion in the parking lot upon her arrival.

(8) The Court finds that the parking lot was a public place.

. . .

(10) The court finds the testifying witness Officer Rosario was credible in her testimony that the Appellant was the driver of the vehicle.

. . .

(12) Officer Rosario was credible in her testimony that she had prior experience with the Defendant being intoxicated on those premises.

. . .

(15) Officer Rosario testified that upon her approach of the Defendant, she noted the Defendant had red, bloodshot eyes, had slurred speech, and he was emitting a strong odor of alcohol.

(16) The Court finds that the testifying witness Officer Rosario was credible in her testimony that she observed signs of intoxication on defendant at the scene of arrest.

. . .

(20) Officer Rosario was credible in her testimony that the Defendant failed the Standard Field Sobriety Tests.

---

[1] Officer Li Wei Rosario was promoted to sergeant between the time of the arrest and the time she testified at trial.

4

. . .

(26) Socorro Police Officer Ezekiel Schultz testified that he could smell the alcohol emitting from the person of the Defendant, had slurred speech and had had red, glossy eyes.

(27) The Court finds that the testifying witness Officer Schultz was credible in his testimony that he observed signs of intoxication on defendant at the scene of arrest.

Based on these findings, the trial court made the following conclusion of law:

Officer Li Wei Rosario had reasonable suspicion or probable cause to detain the defendant to investigate her suspicion of the offense of Driving While Intoxicated.

The detention of Defendant was not in violation of his rights provided by the Fourth and Fourteenth Amendments of the United States Constitution and the Texas Constitution, and Texas Code of Criminal Procedure Art. 38.23.

## II. ISSUES ON APPEAL

Appellant first argues that the trial court should have granted his motion to suppress because Sergeant Rosario did not testify that he committed a driving offense that would have permitted law enforcement to detain him, and that he was arrested without probable cause. He next argues that the evidence is insufficient to support his conviction, because his vehicle was not in motion and Sergeant Rosario did not perform an objective investigation. We address each issue in turn.

## III. NO ERROR IN THE MOTION TO SUPPRESS

Appellant first argues that the trial court should have granted the motion to suppress because the State did not demonstrate Sergeant Rosario had reasonable suspicion to conduct an investigatory stop or have probable cause for arrest. Specifically, Appellant maintains that Sergeant Rosario did not have reasonable suspicion to believe that he violated a traffic offense or was involved in criminal activity. And absent Appellant's detention, Sergeant Rosario never would have had the interactions upon which she premised the arrest. The State responds that Sergeant Rosario had reasonable suspicion to conduct an investigatory stop after she corroborated

5

information from the identifiable 911 caller. This reasonable suspicion evolved into probable cause after Sergeant Rosario smelled alcohol on his breath and observed Appellant's slurred speech, glossy, red eyes, and poor performance on field sobriety tests. We agree with the State.

### A. Standard of Review

Appellate courts review a trial court's ruling on a motion to suppress under a bifurcated standard. *See State v. Arellano*, 600 S.W.3d 53, 57 (Tex.Crim.App. 2020). A trial court's findings of historical fact are afforded almost total deference if they are reasonably supported by the record. *See id.*, *citing Sims v. State*, 569 S.W.3d 634, 640 (Tex.Crim.App. 2019). The same deferential standard of review is applied to a trial court's determination of fact that is based upon a video recording admitted at the suppression hearing. *See State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013), *citing Montanez v. State*, 195 S.W.3d 101, 109 (Tex.Crim.App. 2006). A trial court's application of the law of search and seizure is reviewed de novo. *See Duran*, 396 S.W.3d at 570; *Sims*, 569 S.W.3d at 640 (noting that a reviewing court will uphold the denial of a motion to suppress under any theory of law applicable to the case).

When the trial court makes findings of fact, a reviewing court determines whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *See Abney v. State*, 394 S.W.3d 542, 548 (Tex.Crim.App. 2013). The winning side is afforded the "strongest legitimate view of the evidence," along with all reasonable inferences that can be derived from it. *Duran*, 396 S.W.3d at 570, *quoting State v. Weaver*, 349 S.W.3d 521, 525 (Tex.Crim.App. 2011). The trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000) (en banc).

**B. Reasonable Suspicion**

The Fourth Amendment permits law enforcement to initiate brief investigative stops, such as traffic stops, that are justified by reasonable suspicion. *See Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020); *Navarette v. California*, 572 U.S. 393, 396 (2014); *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex.Crim.App. 2015). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity.'" *Jaganathan*, 479 S.W.3d at 247 (indicating that the issue of the case was not whether the driver was guilty of violating a traffic offense, but whether the trooper had a reasonable suspicion to believe that she was). A detaining officer does not need to be able to "pinpoint a particular penal infraction" before initiating a brief investigative detention based upon reasonable suspicion. *See Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex.Crim.App. 2011). The standard permits law enforcement to make "commonsense judgments and inferences about human behavior" and considers the totality of the circumstances. *Glover*, 140 S.Ct. at 1188, *quoting Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *Navarette*, 572 U.S. at 403 (instructing that an officer "need not rule out the possibility of innocent conduct").

A reasonable suspicion is more than a mere hunch; however, the standard requires considerably less proof of wrongdoing than a preponderance of the evidence, and less than is necessary for probable cause. *See Glover*, 140 S.Ct. at 1187 (noting that reasonable suspicion falls considerably short of 51 percent accuracy), *citing Navarette*, 572 U.S. at 397. Reasonable suspicion is a less demanding standard than probable cause not only because it can be established with information that is different in quantity or content than that required to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990). It also may arise from information less

7

reliable than that required to show probable cause. *Id.* The reasonable suspicion standard disregards the actual subjective motive of the arresting officer and instead determines if there was an objectively justifiable basis for the detention. *See Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex.Crim.App. 2017); *Whren v. United States*, 517 U.S. 806, 809-810 (1996). Because the law prohibits only "unreasonable searches and seizures," an officer's objectively reasonable mistake of fact or law is tolerated. *Heien v. North Carolina*, 574 U.S. 54, 57, 67 (2014); *see United States v. Sharpe*, 470 U.S. 675, 682 (1985) (indicating that the Fourth Amendment does not guarantee against all searches and seizures, only unreasonable searches and seizures).

*1. Establishing reasonable suspicion through an unidentified informant*

Several years after *Terry v. Ohio*[2], the United States Supreme Court rejected the argument "that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person." *Navarette*, 572 U.S. at 397, *quoting Adams v. Williams*, 407 U.S. 143, 147 (1972) (indicating an informant's unverified tip that a person in a vehicle possessed narcotics and a gun may have been insufficient to obtain a search warrant, but carried enough indicia of reliability to justify a forcible stop of the driver). Under appropriate circumstances, an anonymous tip can provide "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *Id.*, *quoting White*, 496 U.S. at 329 (noting that the tipster's familiarity with the respondent's affairs implied the tipster had reliable information about the respondent's illegal activities). As such, a reviewing court must first determine whether the 911 call in question was sufficiently reliable to credit the allegations. *See Navarette*, 572 U.S. at 399.

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

The Supreme Court recognized that an informant who is right about some things is probably right about other facts he has alleged, including the claim that the subject of the tip is engaged in criminal activity. *See White*, 496 U.S. at 331, *citing Illinois v. Gates*, 462 U.S. 213, 244 (1983). In *Alabama v. White*, the Court sustained an investigatory stop after an anonymous caller stated that a woman would leave a specific apartment at a specific time and drive a brown station wagon with a broken taillight to a particular motel, while in possession of cocaine. *See White*, 496 U.S. at 327, 331. Although officers observed the female empty handed after the caller indicated that she would carry the cocaine in a brown attaché case, and they stopped the station wagon before it reached the motel, the Court concluded that the tip was sufficiently corroborated. *See id.* Because law enforcement was tasked only with establishing reasonable suspicion, the Court indicated that the tip did not have to be as detailed or the corroboration as complete as an instance where probable cause was required. *See id.* at 329-31 (noting that neither the name of the female or the apartment number she exited were verified, and officers could not testify that the driver would have pulled into the motel).

### 2. Application to 911 calls

In *Navarette v. California*, the Supreme Court held that an anonymous 911 call bore adequate indicia of reliability to provide law enforcement with reasonable suspicion that a motorist was driving drunk. *See* 572 U.S. 393, 403-04 (2014). A dispatch team received a call from a neighboring county dispatch relaying that a truck ran a party off the road at a highway mile marker five minutes prior. *See Navarette*, 572 U.S. at 395. The caller provided a truck model and license plate number. Eighteen minutes after the 911 call, a responding officer initiated a traffic stop based upon reasonable suspicion of drunk driving when he encountered the truck 19 miles down the road. *See id.* The Supreme Court determined that the 911 caller's eyewitness knowledge of the situation

9

lent significant support to the tip's reliability. *See id.* at 399, *citing Gates*, 462 U.S. at 234 (instructing that "[an informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"). The Court also concluded that the caller was likely telling the truth because she made a contemporaneous report that enabled officers to encounter the truck close in time and distance to the location described. *Id.* at 398-99 (recognizing that such contemporaneous reports have long been treated as "especially reliable"). Finally, the caller's use of the 911 system, which allowed her to be identified, traced, and prosecuted for creating a false report, demonstrated the veracity of the tip. *Id.* at 401 (instructing that a reasonable officer can conclude that a "false tipster would think twice" before using the 911 system).

## C. No Error Concluding Law Enforcement had Reasonable Suspicion

Considering the totality of the evidence, the trial court did not err by concluding that Sergeant Rosario had reasonable suspicion to detain Appellant and investigate the possibility of criminal conduct. *See Glover*, 140 S.Ct. at 1187. During the 911 call, the business owner raised two main allegations. He first claimed that Appellant was parked in a Liberty Star Insurance space that the caller previously asked Appellant not to use because parking was limited, stating Appellant was "always parking in front of my business. He's always drunk. He's always drinking." The business owner was next concerned with Appellant drinking in the parking lot, because Appellant previously caused disruptions at Liberty Star, and the caller had asked him not to enter the premises. Even if we assume that the 911 call was anonymous, the call bore adequate indicia of reliability for Sergeant Rosario to credit the caller's account.[3] *See Navarette*, 572 U.S. at 398-99;

---

[3] The caller stated that he owned Liberty Star Insurance, provided his business address, and informed the 911 operator that he would be on site at Liberty Star that day beginning at 8 a.m. Law enforcement could have easily determined the identity of the caller.

10

*Derichsweiler*, 348 S.W.3d at 914-15 (indicating that a reviewing court does not consider whether the dispatcher relayed the details of the 911 call to the responding officer, because a reasonable suspicion assessment looks to the totality of information known collectively to all cooperating officers, including the 911 operator).

As in *Navarette*, the caller claimed eyewitness knowledge of the situation that lent "significant support to the tip's reliability." *Navarette*, 572 U.S. at 399. Upon her arrival, Sergeant Rosario immediately corroborated eyewitness details the business owner provided, including the color, make, location, and specifics of the truck, such as the utility box in the bed and "Johnny's Tire Shop" decal on the back window. *See id.* (finding that the caller's description of a specific Ford F-150 and plate number increased the reliability of the tip). The caller also provided a "contemporaneous report" that may be considered "especially reliable," because Sergeant Rosario encountered Appellant sitting inside his vehicle and parked in front of Liberty Star Insurance, as the tip alleged. *Id.* at 399-400; *see Gates*, 462 U.S. at 234 (instructing that "[an informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight").

Sergeant Rosario also knew that the caller correctly reported that Appellant owned "Johnny's Tire Shop" based upon her prior interactions with Appellant. *See State v. Woodard*, 341 S.W.3d 404, 412 (Tex.Crim.App. 2011) (instructing that the heightened standard of probable cause for a warrantless arrest under TEX.CODE CRIM.PROC.ANN. ART. 14.01(b) may be based on an officer's prior knowledge and personal observations); *Beverly v. State*, 792 S.W.2d 103, 105 (Tex.Crim.App. 1990) (en banc) (same), *citing with approval Delgado v. State*, 718 S.W.2d 718, 719-20 (Tex.Crim.App. 1986) (en banc) (upholding a warrantless arrest where an officer confirmed the informant's description of the car at the specific location and recognized the

11

defendant from prior drug arrests). Based on the prior intoxication and disturbance calls, Sergeant Rosario also knew that Appellant's tire shop was not far from the caller's insurance business. It is not unreasonable to conclude that Sergeant Rosario's corroboration of these aspects of the tip imparted a degree of reliability to the other allegations made by the caller. *See White*, 496 U.S. at 331-32.[4]

Finally, Sergeant Rosario could conclude that the tipster would not want to lodge false allegations concerning Appellant and request police assistance on a recorded 911 call that allows for identifying and tracing callers. *See Navarette*, 572 U.S. at 401. Texas law provides for the prosecution of any person that knowingly makes a false statement to law enforcement that is material to a criminal investigation. *See* TEX.PENAL CODE ANN. § 37.08.

Considering the totality of the circumstances, Sergeant Rosario was able to articulate more than a hunch or unparticularized suspicion to warrant further investigation when she pulled her patrol unit behind appellant's moving truck. While Sergeant Rosario was not required to pinpoint a particular offense, seeing Appellant's truck in motion provided reasonable suspicion that he may be driving while intoxicated. *See White*, 496 U.S. at 329-330. Sergeant Rosario was permitted to base her suspicion on behaviors that may have appeared innocent, as was the case in *Terry*. *See Terry*, 392 U.S. at 23 (finding reasonable suspicion after law enforcement observed individuals walking back and forth in front of a store, peering into the window, and periodically conferring). The 911 caller, however, described Appellant's behavior to the dispatcher so that Sergeant Rosario collectively possessed specific information as to why Appellant's behavior aroused suspicion. *See id.*; *Derichsweiler*, 348 S.W.3d at 916 (concluding that reasonable suspicion was based upon a

---

[4] While such considerations could potentially draw an evidentiary objection at trial, the rules of evidence do not apply during suppression hearings. *See Granados v. State*, 85 S.W.3d 217, 227 (Tex.Crim.App. 2002).

12

driver's strange non-criminal behavior that a 911 caller explained to dispatch). We thus overrule this portion of Appellant's first issue.

### D. Probable Cause

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.CONST. AMEND. IV; *Mapp v. Ohio*, 367 U.S. 643 (1961). Texas law authorizes an officer to execute a warrantless arrest for any offense committed in his presence or within his view. TEX.CODE CRIM.PROC.ANN. ART. 14.01(b). A warrantless arrest of an individual in a public place for an offense committed in an officer's presence is consistent with the Fourth Amendment, so long as the arrest is supported by probable cause. *See Maryland v. Pringle*, 540 U.S. 366, 369 (2003).

Probable cause is incapable of precise definition, but instead depends on the totality of circumstances. *Id.* at 371, *citing Gates*, 462 U.S. at 231-32 (indicating that the standard deals with the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"). Probable cause for a warrantless arrest exists if "the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009), *citing Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Florida v. Harris*, 568 U.S. 237, 243 (2013), *quoting Gates*, 462 U.S. at 235. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 337 (2014) (noting this is why a grand jury's

13

finding of probable cause can be made without an adversarial hearing, where the only the State's side is presented).

An arresting officer's state of mind is not relevant to the existence of probable cause. *See Whren*, 517 U.S. at 812-813 (noting that the Fourth Amendment's concern with reasonableness permits certain actions to be taken in certain circumstances, whatever the subjective intent); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (providing that an officer's state of mind is "irrelevant" and provides "no basis for invalidating an arrest"). The Court of Criminal Appeals has instructed that probable cause may be based upon an officer's prior knowledge and personal observations, and the officer may rely on reasonably trustworthy information provided by another person in making an overall determination. *See State v. Martinez*, 569 S.W.3d 621, 628 (Tex.Crim.App. 2019), *citing Woodard*, 341 S.W.3d at 412.

### E.  No Error Concluding Law Enforcement Had Probable Cause to Arrest

The trial court also did not err by concluding that Sergeant Rosario had probable cause to arrest Appellant for driving while intoxicated. In her interaction with Appellant, Sergeant Rosario noticed that he had red, bloodshot eyes, slurred speech, and she could smell alcohol emitting from Appellant's breath and person. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex.Crim.App. 2010) (recognizing that slurring words, bloodshot eyes, and admissions by the defendant concerning how much he drank would logically raise an inference that the defendant was intoxicated at the time of driving). Appellant told Sergeant Rosario he had consumed "only" three beers. Yet Appellant displayed indications of intoxication while performing the field sobriety tests, and he could not follow instructions or keep his balance. *See State v. Mechler*, 153 S.W.3d 435, 442 (Tex.Crim.App. 2005) (finding evidence that appellant failed field sobriety tests, admitted to drinking "[a] little" alcohol, and had the odor of alcohol on his breath was probative to his

intoxication); Nat'l Highway Traffic Safety Admin., The Visual Detection of DWI Motorists 4-5 (Mar. 2010), online at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/808677.pdf (last visited March 18, 2021) (listing balance problems, slurred speech, and odor of alcoholic beverage from the driver as post-stop clues of intoxication), *cited with approval in Navarette*, 572 U.S. at 402, 403. Sergeant Rosario had previously responded to intoxication and disturbance calls involving Appellant, and the 911 caller reported that Appellant was "always parking in front of [the insurance] business drinking." *See Woodard*, 341 S.W.3d at 412 (instructing that probable cause may be based on an officer's prior knowledge and trustworthy information provided by another person); *cf. Virginia v. Moore*, 553 U.S. 164, 166-67 (2008) (noting that officers stopped Moore because dispatch reported that "Chubs" was driving with a suspended license, and an officer knew Moore by that nickname).

Sergeant Rosario had probable cause to believe that Appellant drove while intoxicated because his truck was operating as she arrived and she witnessed his bloodshot eyes, slurred speech, and the odor of alcohol coming from his body, combined with his admission to drinking only three beers, and his poor performance on field sobriety tests. As such, we conclude that the trial court did not err by denying Appellant's motion to suppress, and we overrule Issue One.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant argues that his conviction is not supported by sufficient evidence because Sergeant Rosario had no legal basis to initiate an investigatory stop, and the State did not prove that the vehicle was in operation. The State responds that the evidence is sufficient because Appellant was operating his truck when Sergeant Rosario arrived, he displayed physical signs of intoxication, and performed poorly on field sobriety tests. In addition, Appellant had a blood alcohol concentration of 0.179 g/210L, more than twice the legal limit. He stipulated to the

15

predicate prior convictions to enhance the conviction to a felony. We agree, and conclude that the issue is without merit.

### A. Standard of Review

The Fourteenth Amendment's guarantee of due process requires that every conviction must be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). In a legal sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 912 (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Circumstantial evidence is considered as probative as direct evidence in establishing guilt, and circumstantial evidence alone can establish guilt of an actor. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010) (instructing that a conviction for driving while intoxicated may be supported solely by circumstantial evidence). A court assesses a sufficiency challenge by comparing the evidence presented at trial to the elements of the offense as "defined by the hypothetically correct jury charge for the case." *See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex.Crim.App. 2018), *quoting Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) (en banc).

Applying that standard, we recognize that our system designates the jury as the sole arbiter of the credibility and the weight attached to the testimony of each witness. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex.Crim.App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778

16

(Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319. In doing so, the jury remains at liberty to believe "all, some, or none of a witness's testimony." *Metcalf*, 597 S.W.3d at 855. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

A grand jury indicted Appellant for driving while intoxicated, enhanced to a felony for having been convicted at least twice prior.[5] A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." TEX.PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (enhancing driving while intoxicated to a felony if the offender has been twice convicted); *see Ramjattansingh*, 548 S.W.3d at 548. "Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" (or "any other substance") into the body, or "having an alcohol concentration of 0.08 or more." TEX.PENAL CODE ANN. § 49.01(2)(A), (B). Because Appellant stipulated to the four driving while intoxicated convictions alleged in the indictment, the State was not required, or even permitted, to present proof of these convictions during its case-in-chief. *See Tamez v. State*, 11 S.W.3d 198, 202 (Tex.Crim.App. 2000) (instructing that when a felony-DWI defendant stipulates to the prior convictions alleged in the indictment, the State may read the indictment at the commencement of trial that mentions the prior convictions, but may not present evidence of the convictions during its case-in-chief).

---

[5] A grand jury returned an indictment that charged Appellant "operate[d] a motor vehicle in a public place while [he] was intoxicated," an analysis of his blood, breath, or urine "showed an alcohol concentration level of 0.15 or more," and he had previously been convicted of driving while intoxicated on four occasions. ~~CR10; 3RR11-12~~

17

**B. Trial Proceedings**

Sergeant Rosario testified at trial consistently with the testimony she provided during the preliminary hearing, including that she had previously dealt with Appellant and he was "reversing out of the parking space" when she arrived. She made contact with Appellant while he was sitting in the driver's side of the vehicle with the keys in the ignition and the vehicle running. As they conversed, Appellant stated he had consumed three beers, and she noticed he had glossy, red, bloodshot eyes, slurred speech, and smelled of alcohol. Appellant stated that he "was just trying to get to his business," Johnny's Tire Shop; however, Sergeant Rosario knew that he had parked in front of the wrong business and his tire shop was located further down in the shopping center.

Sergeant Rosario narrated her dash cam video that depicted Appellant performing standardized field sobriety tests. Appellant asked Sergeant Rosario to "give him a break several times" as she administered the horizontal gaze nystagmus test. He indicated that he understood Sergeant Rosario's instructions concerning the walk and turn and one leg stand tests, but he demonstrated enough clues on the field sobriety tests to draw the conclusion that he was potentially intoxicated. Appellant argued with Sergeant Rosario when she arrested him at the conclusion of the tests, again asking her if she could "cut him a break."

Trooper Schultz also testified consistently with what he stated during the suppression hearing, including that he observed Appellant's red, bloodshot eyes, slurred speech, and odor of alcohol as he transported Appellant to the police substation. Based on his training, experience, and observations, he determined that Appellant was intoxicated.

El Paso Police Department Technical Supervisor Martha Mendoza testified that she was certified by the Texas Department of Public Safety to maintain the Intoxilyzer 5000 breath test instruments. She opined that the Intoxilyzer 5000 that Trooper Schultz used to test Appellant's

breath was working properly at the time, based on diagnostic checks and maintenance records. Trooper Schultz also followed protocol to produce an accurate breath test in Appellant's case, which reflected a blood alcohol concentration of 0.179 grams of alcohol per 210 liters of breath. Her general calculations indicated that a person of Appellant's gender, height, and weight who consumed three standard beers would have a blood alcohol concentration of 0.04 to 0.06 grams of alcohol per 210 liters of breath. She calculated that the same person would require between eight to eleven beers to be in their body at the time of the test for the instrument to reflect a blood alcohol concentration of 0.179.

The State admitted certified copies of the indictments and judgments of Appellant's prior driving while intoxicated convictions that were alleged in his indictment, and Appellant stipulated to the convictions.

## C. A Rational Fact Finder Could Have Found Appellant Guilty

Viewing all the evidence in the light most favorable to the verdict, a rational fact finder could have found all the essential elements of the offense beyond a reasonable doubt. *See Ramjattansingh*, 548 S.W.3d at 546. The State proved that Appellant was operating his truck, because Sergeant Rosario testified that, when she approached the automobile, she saw the "reverse lights on," and did not recall if Appellant "put [the truck] in park right away or if he stepped on the brakes first before he put it in park." The State presented evidence that Appellant's blood alcohol concentration was 0.179 at the time of the test. *See* TEX.PENAL CODE ANN. § 49.01(2)(B). The State also demonstrated that he experienced the loss of the normal use of his mental or physical faculties at the time by his slurred speech, bloodshot eyes, performance on field sobriety tests. *See id.* § 49.01(2)(A). We conclude that the evidence is sufficient to support Appellant's conviction, and we overrule Issue Two.

## V. CONCLUSION

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgment adjudicating guilt.

JEFF ALLEY, Justice

April 16, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)